***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAWN H. ORT & JEFFREY W. ORT, | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 3:12-cv-04630-FLW |
| v. | : | |
| QUIVER FARM PROJECTS, INC.; QUIVER FARM, INC.; JUSTIN T. MART; MARK D. MEADOWCROFT, | : | OPINION |
| Defendants. | : | |

**WOLFSON, United States District Judge**:

This tort action arises from a motor vehicle accident wherein Plaintiffs Dawn Ort ("Ort") allegedly suffered injuries caused by defendant drivers Justin Mart and Mark Meadowcroft ("Meadowcroft"). Ort and her husband, Jeffery Ort (collectively, "Plaintiffs'), bring the instant suit against these drivers as well as Mart's employers, Quiver Farm Projects, Inc and Quiver Farm, Inc. (collectively, "Defendants"), for negligence and loss of consortium. Before the Court are two separate Motions for Summary Judgment filed by the Quiver Farm Defendants based upon a failure to satisfy the verbal threshold requirements of N.J.S.A. 39:6A, and by Meadowcroft, based upon a lack of evidence of negligence. For the reasons that follow, Quiver Farm's Motion is **DENIED** and Meadowcroft's Motion is **GRANTED**.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are not in dispute unless otherwise noted. On August 6, 2010, Plaintiff Ort, Defendant Meadowcroft, and Defendant Mart were driving through stop-and-go traffic going west on U.S. Interstate Route 78 near mile marker 20.7. (New Jersey Police Crash

1

Investigation Report). Mart was driving a heavy utility van owned by Quiver Farm Projects, Inc., and in the course of driving, Mart was unable to bring his vehicle to a stop; as a result, Mart's van struck the rear of Meadowcroft's stationary vehicle. (Deposition of Rebekah Kallatch, T14:13-T14:22; Deposition of Justin Mart, T20:20-T21:20; Deposition of Mark Meadowcroft, T15:11-T15:14). Pushed by Mart's van, Meadowcroft's vehicle in turn struck the rear of the vehicle driven by Ort. (Deposition of Justin Mart, T20:20-T21:20). Ort was subsequently taken to Hunterdon Medical Center in Flemington, New Jersey, where she was treated and discharged with a diagnosis of a cervical sprain/strain. (Hunterdon Medical Center Emergency Records).

Because of these alleged injuries, Ort underwent a variety of tests and was seen by several doctors. Particularly, on September 30, 2010, Ort underwent an MRI of her lumbar spine and cervical spine. (MRI of Phillpsburg MRI Reports dated September 30, 2010). The MRI of her lumbar spine was negative, but the MRI of her cervical spine revealed mild disc bulging at C5-6 and to a lesser degree at C3-4. Id. Dr. Fracis Pizzi, Ort's neurosurgeon, examined Ort and the MRI results and made a determination that Ort was not a candidate for surgery. (Correspondence from Dr. Francis Pizzi to Dr. Sabine Paul-Yee dated November 1, 2010). On April 12, 2011, Ort underwent a second MRI of the cervical spine which showed straightening of the normal cervical lordosis which may have been secondary to head positioning versus muscle spasm, as well as mild disc disease involving C3-4, C4-5, and C5-6 levels without evidence of significant spinal canal neuroforaminal stenosis. (The Image Care Center MRI Report dated April 12, 2011).

Aleya Salam, M.D., Ort's pain management doctor, diagnosed Ort with cervical disc syndrome and radiculopathy as a result of the motor vehicle accident, and administered a

cervical epidural steroid injection on May 6, 2011, and again on June 16, 2011.  (Narrative Report of Aleya Salam, M.D.).  On October 22, 2012, Ort began to see orthopedist David J. Feldman, M.D.  Based on MRI studies and EMGs, Dr. Feldman, who submitted a physician's certification in this case, determined that Ort's symptoms were permanent and directly related to the motor vehicle accident.  (Narrative Report of David Feldman, M.D.)  Ort was also referred to neurologist, Richard Tonzola, M.D. who determined that she has chronic right cervical radiculopathy due to the motor vehicle accident. (Narrative Report of Richard Tonzola, M.D.).  Dr. Tonzola further opined that this is a permanent problem which may require future medical treatment under Dr. Feldman's care.  Id.

On July 23, 2012, Plaintiffs filed the instant Complaint against Quiver Farm Defendants and Meadowcroft alleging negligence and loss of consortium as to Mr. Ort.  In this matter, Quiver Farm Defendants move for summary judgment based upon failure to satisfy the requirements of N.J.S.A. 39:6A-8(a); Meadowcroft also moves for summary judgment based upon a lack of evidence of negligence.

## II.    DISCUSSION

### A.    Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.2006).  In determining whether a genuine issue of material fact exists, the Court

must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (3d Cir.2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206–07 (3d Cir.2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Id. at 261 (quoting Matsushita, 475 U.S. at 586). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

    **B.    Quiver Farm Defendants' Motion**

The Automobile Insurance Cost Reduction Act ("AICRA") was enacted to control the rising cost of automobile insurance and to achieve lower insurance premiums. See N.J.S.A. § 39:6A-1.1, et seq.; Dyszel v. Marks, 6 F.3d 116, 119-20 (3d Cir. 1993). Under AICRA,

4

individuals have the option of lower premium payments in exchange for restricting their right to sue a defendant for non-economic damages for injuries resulting from an automobile accident.[1] DiProspero v. Penn, 183 N.J. 477, 481 (2005).  This limitation is known as the "verbal threshold."[2]  If an individual, such as Ort, has elected the verbal threshold option, that individual "exempts other private passenger auto owners from tort liability for non-economic losses, unless one of the… categories of specifically listed injuries is involved."  Dyszel, 6 F.3d at 120.  These categories of injuries are: (1) death; (2) dismemberment; (3) significant disfigurement or significant scarring; (4) displaced fractures; (5) loss of fetus; or (6) a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.  N.J.S.A. § 39:6A-8(a).  An injury is considered to be permanent "when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment."  Id.

To overcome the verbal threshold, AICRA requires that, within 60 days following the answer to the complaint, a plaintiff must, "provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician" stating that the plaintiff has suffered a statutorily described injury.  Id.  The physician's opinion and certification must "be based on and refer to objective clinical evidence" and cannot be "dependent entirely upon subjective patient response."  Id.  If the certification does not rely on objective medical evidence, the court may grant summary

---

[1] Under N.J.S.A. 39:6A-2(a), a vehicle used in the business of farming or ranching is considered an "automobile."  It is undisputed that Quiver Farm Projects, Inc. is in the business of farming animals; specifically, it raises and keeps animals for resale.  It is further undisputed that the van driven by Mart was used in connection with the business of farming animals, and that Mart was using the van in this capacity when the motor vehicle accident occurred.  Thus, it is an automobile under AICRA.

[2] Here, there is no dispute that Ort is subject to the verbal threshold requirement by virtue of the limited tort election on her auto insurance policy.

judgment for the defendant. See Davidson v. Slater, 189 N.J. 166 (2007). Evidence of bulging discs has been found to be sufficient to overcome a motion for summary judgment for failure to meet the verbal threshold requirement. See Pollner v. Perry, No. A-2125-04T32125, 2005 WL 2708876, at *2 (App. Div. Oct. 24, 2005); Caseres v. Fernandes, No. A-3589-05T53589, 2007 WL 209911, at *4 (App. Div. Jan. 29, 2007).

Here, Plaintiff alleges that she suffered permanent injuries as a result of the accident. Based on the election of the verbal threshold in her automobile insurance policy, Ort is required to submit a physician certification, based on objective medical evidence, that she has suffered a permanent injury. In their moving brief, Quiver Farm Defendants argued that summary judgment is appropriate because Ort failed to submit such a certification. However, on December 23, 2013, Quiver Farm Defendants notified the Court that they discovered a copy of a physician certification by Dr. Feldman in their file. As a result, Quiver Farm Defendants' argument that Plaintiffs failed to provide a physician's certification is no longer viable. Nevertheless, it is Quiver Farm Defendants' position that even in light of that physician's certification, Plaintiffs have not met their burden of showing by objective medical evidence that Ort has sustained a permanent injury.

In response, Ort maintains that her two disc bulges are documented by way of objective medical evidence in the form of MRI and EMG studies which were positive for right sided cervical radiculopathy. In addition, Ort has also supplied narrative reports by her orthopedist, Dr. Feldman, and neurologist, Dr. Tonzola, indicating that her injuries are permanent and causally related to the motor vehicle accident. Quiver Farm Defendants counter that Dr. Tonzola, in forming his medical opinion, did not rely on objective medical evidence, such as Ort's cervical MRI films. In fact, they argue, Ort's injuries are not permanent because Dr. Pizzi

6

made findings after the initial MRI scans that no neurological impairment in Ort's neck or back was found and that she was not a surgical candidate.

Quiver Farm Defendants go on to present certain inconsistencies which, they argue, prove that Ort's symptoms are unrelated to the motor vehicle accident. For example, the March 18, 2013 EMG report by Dr. Tanzola indicates that Ort's rapid onset neurological symptoms began almost three years after the accident at issue. This large gap in time could, these Defendants maintain, indicate that her neurological symptoms are unrelated to the accident. In addition, a progress note from Ort's family physician, Dr. Lillian Theune, dated March 4, 2013, states that Ort began to wonder if her neurological symptoms over the past few months were stress related. Further, Quiver Farm Defendants contend that neither of the narrative reports by Dr. Feldman and Dr. Tonzola explain why Ort's symptoms are directly caused by the motor vehicle accident and not related to an underlying degenerative disc disease noted in both MRI reports. None of Quiver Farm Defendants' arguments are appropriate on this motion for summary judgment.

The Court's inquiry on this motion is whether Ort's injuries are supported by objective medical evidence that, if believed by the fact-finder, would constitute a permanent injury and, if so, whether the evidence demonstrates a genuine issue of material fact regarding the nature and extent of plaintiff's injuries. See Oswin v. Shaw, 129 N.J. 290 (1992); Branca v. Matthews, 317 F. Supp. 2d 533, 539 (D.N.J. 2004); see also Serrano v. Serrano, 183 N.J. 508, 514-15 (2005); Davidson v. Slater, 189 N.J. 166, 187 (2007). On that question, I find that Ort has provided sufficient objective medical evidence to satisfy the verbal threshold. First, Ort's injuries were diagnosed through MRI and EMG studies, which are clearly objective medical evidence, and in fact, Drs. Feldman and Tonzola relied on this evidence in their narrative reports. Dr. Feldman

7

determined that based upon these MRI studies and EMGs -- in addition to patient history, examination, and review -- that the symptoms and findings with regard to Ort are permanent and directly related to the motor vehicle accident. Further, while Dr. Tonzola was unable to review the MRI scans, he was able to conduct EMG studies, along with a detailed neurological exam, in order to form his opinion that Ort has permanent right cervical radiculopathy due to the motor vehicle accident. Thus, Quiver Farm Defendants' argument that Ort's injuries are not supported by objective medical evidence is unavailing.

Next, irrespective of Dr. Pizzi's determination that Ort was not a candidate for surgery and Dr. Salem's failure to state that Ort's injuries were permanent, there is sufficient objective medical evidence that, if believed by the fact-finder, would constitute a permanent injury. In addition, the causation issues raised by the Quiver Farm Defendants are clearly questions of fact for the fact-finder to decide. Davidson v. Slater, 189 N.J. 166, 170 (2007) ("If defendant raises a genuine factual issue about the causation of plaintiff's claimed injuries by pointing to other injuries the plaintiff may have experienced, that disputed issue of causation is for the fact-finder to decide…").

As a result, the Court finds that Plaintiffs have provided sufficient objective medical evidence to satisfy the verbal threshold, and therefore, Quiver Farm Defendants' motion is **DENIED**.

### C. Meadowcroft's Motion

In a negligence claim, plaintiff must prove the existence of a duty, a breach of that duty, proximate cause, and damages suffered by the plaintiff. Filipowicz v. Diletto, 350 N.J. Super., 552, 558 (App. Div. 2002) (citing Conklin v. Hannock Weissman, 145 N.J. 395, 417 (1996)). Under New Jersey law, negligence is a fact which must be proven. Long v. Landy, 35 N.J. 44

(1961); see Bohn v. Hudson & Manhattan R.R. Co., 16 N.J. 180 (1954); Bratka v. Castles Ice Cream Co., 40 N.J. Super. 576 (App. Div. 1956).  The mere showing of the incident causing the injury in question is not sufficient to find negligence.  Long, 35 N.J. at 417.

The initial inquiry in any negligence action must be whether the defendant has breached a duty owed to the plaintiff, which if observed, would have averted plaintiff's injuries.  Kulas v. Public Service Electric and Gas Co., 41 N.J. 311, 316 (1964); Fortugno Realty Co. v. Schiavone Bonomo Corp., 39 N.J. 382 (1963).  The standard of care by which one's actions are measured is "the conduct of the reasonable man of ordinary prudence under the circumstances." Ambrose v. Cyphers, 29 N.J. 138, 144 (1959).  A driver has the duty to keep his car under such control as would reasonably enable him to avoid striking a vehicle which was at all times plainly within his view in front of him.  See Dolson v. Anastasia, 55 N.J. 2, 11 (1969).

Here, Meadowcroft bases his motion for summary judgment on the fact that no parties dispute that he brought his vehicle to a complete stop prior to his car being struck by the vehicle operated by Mart.  As a result, Meadowcroft argues, he has satisfied his duty to act reasonably by stopping his vehicle before striking Ort's vehicle, and that the sole reason why his car hit Ort's vehicle was due to the impact from Mart's van.

Importantly, Plaintiff has not opposed Meadowcroft's motion.  Rather, Quiver Farm Defendants challenge Meadowcroft's motion by arguing that there is a substantial and genuine issue of material fact as to what transpired immediately before the motor vehicle accident.  More specifically, Quiver Farm Defendants argue that Plaintiff "cut off" Meadowcroft, which caused him to stop short.  On the other hand, Ort claims that she did not make a single lane change.  However, Meadowcroft correctly notes that regardless of whether he was "cut off," he brought his vehicle to a complete stop without hitting Ort's vehicle prior to the accident, which is not

disputed.  Further, there is no dispute that Meadowcroft would not have hit Plaintiff's car had Mart not impacted Meadowcroft's vehicle from the rear.  As a result, the Court finds that Meadowcroft did not breach his duty to Ort, and thus, he was not negligent.  Meadowcroft's motion is **GRANTED**.


**DATED**: June 19, 2014                                         /s/        Freda L. Wolfson
                                                                                 Freda L. Wolfson, U.S.D.J.